HON. ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, | Case No. 17-627RSL |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| ALASKAN COPPER COMPANIES, INC., d.b.a. ALASKAN COPPER WORKS, | |
| Defendant. | |

## I.    STIPULATIONS

Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") filed its lawsuit against Defendant Alaskan Copper Companies, Inc., d.b.a. Alaskan Copper Works ("ACW") on April 19, 2017, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from ACW's Facility in Seattle, Washington and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs.

Soundkeeper and ACW agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

CONSENT DECREE: 17-627RSL
p. 1

Soundkeeper and ACW stipulate to the entry of this Consent Decree without trial, adjudication, or admission, of any additional issues of fact or law regarding Soundkeeper's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this *March* 29, 2018

Alaskan Copper Companies, Inc., d.b.a.            Puget Soundkeeper Alliance

Alaskan Copper Works

By _____            By _____

                                                                          Chris Wilke

Title: _____            Title: Executive Director & Soundkeeper

## II.    ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.    This court has jurisdiction over the parties and subject matter of this action.

2.    Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3.    This Consent Decree applies to and binds the parties and their successors and

CONSENT DECREE: 17-627RSL
p. 2

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

Soundkeeper and ACW stipulate to the entry of this Consent Decree without trial, adjudication, or admission, of any additional issues of fact or law regarding Soundkeeper's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this ___March 21___, 2018

Alaskan Copper Companies, Inc., d.b.a.       Puget Soundkeeper Alliance

Alaskan Copper Works

By _____       By _____

                                   Chris Wilke

Title: _____       Title: Executive Director & Soundkeeper

## II.  ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.     This court has jurisdiction over the parties and subject matter of this action.

2.     Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3.     This Consent Decree applies to and binds the parties and their successors and

CONSENT DECREE: 17-627RSL
p. 2

assigns.

    4.      This Consent Decree applies to the operation, oversight, or both by Defendant ACW of its Facility at 3200 6th Avenue South, Seattle, Washington, and nearby buildings (the "Facility"). **Exhibit A** is a depiction of the Facility that identifies areas discussed in this Consent Decree.

    5.      This Consent Decree is a full and complete settlement of the claims in the Complaint and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387. These claims are released and dismissed with prejudice. Enforcement of this decree is Soundkeeper's exclusive remedy for any violation of its terms.

    6.      This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Soundkeeper in this case or of any fact or conclusion of law related to those allegations.

    7.      ACW agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this decree:

    a.      ACW will comply fully with all conditions of its National Pollutant Discharge Elimination System Permit No. WAR000139 (the "NPDES Permit") and any successor, modified, or replacement permit, and the stormwater pollution prevention plan ("SWPPP") adopted thereunder;

    b.      ACW may request that the Washington Department of Ecology ("Ecology") terminate coverage under its NPDES Permit as provided under the Clean Water Act and the terms of the NPDES Permit. If Ecology acts to terminate coverage, the terms of

CONSENT DECREE: 17-627RSL
p. 3

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

this Consent Decree terminate upon ACW's completion of its payment obligations in

paragraphs II (8) and (9) of this Consent Decree.

   c. ACW may consolidate or move outfalls provided it does so in full

compliance with the conditions of the NPDES Permit.

   d. ACW will provide Soundkeeper with at least 60 days' notice in writing

or email, and, at Soundkeeper's request, an opportunity for Soundkeeper and Soundkeeper's

expert to inspect the outfall(s) drainage area and meet in person with ACW prior to

terminating monitoring of an outfall. ACW may terminate monitoring at an outfall as allowed

by condition S4.B.2 of the NPDES Permit.

   e. Beginning on the date of the entry of this Consent Decree, ACW will

monitor outfalls 1, 3, 7, and 10 as labeled in the map attached as **Exhibit A**.

   f. ACW will sample discharges from Outfall 1 and conduct lab analysis

for the parameters required by the NPDES Permit each month in which it discharges until it

has collected and analyzed five monthly samples, and will have begun sampling no later than

January 2018. If pollutant levels in samples exceed benchmarks (for a single parameter) in

three of these samples or more (of these five), then outfalls 1 and 2 will be provided with

Level Three Corrective Action treatment on the same timeline as other outfalls to be treated,

as described in sections (II)(7)(h – m) below.

   g. ACW will sample discharge from Outfall 10 and conduct lab analysis

for the parameters required by the NPDES Permit each month in which it discharges until it

has collected and analyzed five monthly samples, and will have begun sampling no later than

February 2018. If pollutant levels in samples exceed benchmarks (for a single parameter) in

three samples or more (of these five), then ACW will: replace the media in each of the

CONSENT DECREE: 17-627RSL
p. 4

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

downspout filtration systems for 3317 within two months of the third exceedance; and

perform a Level Three Corrective Action on the regular permit schedule, that is, install

treatment prior to September 30, 2019; and maintain such corrective actions and best

management practices ("BMPs") as required by the permit, including condition S8.A

(requiring permittees to continue to operate or maintain any source control or treatment BMP

related to Level One, Two, or Three responses implemented prior to the effective date of the

current NPDES Permit).

   h. ACW will have replaced filter media in the downspout filtration

systems from the 3405 building no later than January 30, 2018.

   i. ACW will perform hydrologic/hydraulic analysis, conduct a treatment

alternative analysis, design treatment systems, and prepare a Level Three Corrective Action

engineering report as required by NPDES Permit Condition S8.D ("Engineering Report").

This Engineering Report will be prepared by a qualified stormwater professional and will, in

the judgment of that professional, be reasonably expected to result in discharges that meet the

NPDES Permit benchmarks and effluent limitations considering the Facility's sample data

and treatment BMPs for discharge from outfalls 3, 4, 7, and 9.5. The draft analyses, design,

and preparation described above will be completed no later than April 20, 2018.

   j. As soon as possible and no later than April 20, 2018, ACW will submit

a draft Engineering Report detailing planned system(s) to treat the entire drainage areas

discharging to outfalls 3, 4, 7 and 9.5, to be installed and operational no later than September

15, 2018 to Soundkeeper for review by Soundkeeper's engineer.

   k. Within 14 days of receiving the draft Engineering Report, Soundkeeper

may provide written comments on the report to ACW. ACW is not obligated to consider any

CONSENT DECREE: 17-627RSL
p. 5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

comments received more than 14 days after Soundkeeper receives the draft Engineering Report. Within 14 days of receiving Soundkeeper's comments, ACW will in good faith consider each comment and provide written responses answering Soundkeeper's questions, affirming its agreement to implement Soundkeeper's recommendations, and/or providing detailed explanations for any decisions not to implement Soundkeeper's recommendations.

l.      ACW will pay reasonable costs for Soundkeeper's engineer's review of the draft Engineering Report not to exceed $3,000 within 30 days of receipt of the invoice for such work.

m.     As soon as possible and no later than May 30, 2018, ACW will submit a final Engineering Report to Ecology.

n.      As soon as possible and no later than September 15, 2018, ACW will implement treatment for the entire drainage areas discharging to outfalls 3, 4, 7, and 9.5, including lift stations, rerouting drainage systems, and installing treatment units, pursuant to its Engineering Report.

o.      ACW will prepare and implement an Operation and Maintenance Manual as required by NPDES Permit condition S8D, which requires that such a manual be submitted to Ecology no later 30 days after construction/installation is complete.

p.      Thirty days after this Consent Decree is entered, ACW will amend the Facility SWPPP to include the treatment, corrective actions, BMPs, and monitoring procedures agreed to in this Consent Decree, including revisions to:

i.      Accurately describe sample locations;

ii.     Identify, describe the location of, and industrial activity within basins for the effluent from outfalls 2, 4, and 9.5 and explain the reasons why ACW considers

CONSENT DECREE: 17-627RSL
p. 6

these outfalls to be substantially identical to effluent from outfalls 1, 7, and 7, respectively, as required by NPDES Permit condition S3.B.5 (discussing sampling plan requirements).

iii.       Provide for the maintenance of BMPs currently implemented in outfall basins 3, 4, 7, and 9.5, including monthly sweeping; monthly backpack blowing; quarterly catch basin cleaning; storing materials in combined sewer basins; and dust reduction screening along the fence-line south of the 3300 building.

iv.       Provide for the maintenance of fueling station BMPs including greater than 110% containment with a double walled tank, a concrete basin around the tank, a spill kit kept within 25 feet, training as to the Spill Control and Emergency Cleanup Plan, and covering storm drains that receive stormwater from fueling areas when fueling occurs.

v.       Provide for the maintenance of BMPs pertaining to outdoor storage of materials and equipment, including identifying locations in which materials and equipment are stored; minimizing the exposure of materials that leach contaminants; not storing material that has a high potential for erosion outside; storing base materials within the combined sewer basin and finished product in stormwater basins; generally covering loading docks and locating them within the combined sewer basin; sweeping as required; and maintaining vehicles and equipment under cover outside of stormwater basins.

q.       ACW agrees to maintain all of its treatment system(s) and downspout filter systems in accordance with the maintenance procedures and recommendations specified by the developer/manufacturer of the treatment or product, or in the case of a custom system, a qualified stormwater professional, as outlined in ACW's updated SWPPP.

r.       ACW will, for a period of two years beginning with the date of the entry of this Consent Decree, forward copies to Puget Soundkeeper Alliance of all written or

CONSENT DECREE: 17-627RSL
p. 7

electronic communications between ACW and Ecology concerning ACW's compliance with

the Permit and the Clean Water Act, including but not limited to discharge monitoring reports,

engineering reports, effluent characterization or laboratory reports, correspondence, and

inspection reports. All copies will be forwarded to Puget Soundkeeper Alliance at the address

provided in Section 17 of this Consent Decree on a quarterly basis and not later than the forty-

fifth day following the end of each calendar quarter.

      s.      ACW will provide copies of its updated SWPPP and Operation and

Maintenance Manual to Soundkeeper no later than 30 days after the entry of this consent

decree and 30 days following implementation of any and all treatment installed throughout the

duration of this agreement.

      t.      ACW will provide documents evidencing ACW's compliance with the

terms in this agreement, including but not limited to all discharge monitoring data (monthly

and quarterly), laboratory reports, documentation of filter media replacement, and written

notice of completion of construction of the Level Three Corrective Action, on a quarterly

basis and not later than the forty-fifth day following the end of each quarter.

      8.      Not later than 7 days after the entry of this Consent Decree, ACW will pay ONE

HUNDRED AND FIFTY-TWO THOUSAND, FIVE HUNDRED dollars ($152,500.00) to the

Rose Foundation for Communities and the Environment as described in **Exhibit B** to this Consent

Decree, for environmental benefit projects benefiting water quality projects in the Puget Sound

basin. Payment will be made to the order of and delivered to Tim Little, Rose Foundation, 201

4th Street, Ste. 102, Oakland, CA 94607. Payment shall include the following reference in a cover

letter or on the check: "Consent Decree, PSA v. Alaskan Copper Companies, Inc." A copy of

each check and cover letter, if any, shall be sent simultaneously to Soundkeeper.

CONSENT DECREE: 17-627RSL
p. 8

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

9.     ACW will pay Soundkeeper's reasonable attorney and expert fees and costs in the amount of FORTY-SIX THOUSAND FOUR HUNDRED AND EIGHTY EIGHT DOLLARS AND THIRTY FOUR CENTS ($46,488.34). Payment will be made within 7 days of the entry of this decree by check payable and mailed to Smith & Lowney, PLLC, 2317 E. John Street, Seattle, Washington 98112, attn: Richard Smith. This payment is full and complete satisfaction of any claims Soundkeeper may have under the Clean Water Act for fees and costs.

10.     A force majeure event is any event outside the reasonable control of ACW that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that ACW notifies Soundkeeper of the event; the steps that ACW will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

ACW will notify Soundkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than ten days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.     Acts of God, war, insurrection, or civil disturbance;

    b.     Earthquakes, landslides, fire, floods;

    c.     Actions or inactions of third parties over which defendant has no control;

    d.     Restraint by court order or order of public authority;

    e.     Strikes; and

CONSENT DECREE: 17-627RSL
p. 9

      f.     Litigation, arbitration, or mediation that causes delay.

11.    This court retains jurisdiction over this matter. And, while this decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this decree. In the event of a dispute regarding implementation of, or compliance with, this decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record.  If no resolution is reached at that meeting or within thirty (30) days of the notice, whichever occurs first, either party may file a motion with this court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, shall apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

12.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the signing of this Consent Decree by the parties, Soundkeeper shall serve copies of it upon the Administrator of the U.S. EPA and the Attorney General.

13.    This Consent Decree takes effect upon entry by the court. It terminates two years after entry by the court, or as provided by paragraph II (7)(b).

CONSENT DECREE: 17-627RSL
p. 10

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

14.     All parties have participated in drafting this decree.

15.     This Consent Decree may be modified only upon the approval of the court.

16.     If for any reason the court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the court to entry of this Consent Decree.

17.     Notifications required by this Consent Decree must be in writing. The sending party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) e-mail. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving party at the addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 16.

**if to Soundkeeper:**

        Katelyn Kinn
        Puget Soundkeeper Alliance
        130 Nickerson Street, Suite 107
        Seattle, WA 98109
        katelyn@pugetsoundkeeper.org

**and to:**

        Smith & Lowney PLLC
        2317 East John St.
        Seattle, WA 98112
        richard@smithandlowney.com

**if to ACW:**

        Carl Vinke
        P.O. Box 3546

CONSENT DECREE: 17-627RSL
p. 11

Seattle, Washington 98124-3546
cbv@alaskancopper.com

**and to:**

Jeff Kray
1191 2nd Ave., Suite 2200
Seattle, WA 98101
jkray@martenlaw.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 5:00 p.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided via e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

DATED this 30th day of May, 2018.

HON. ROBERT S. LASNIK
UNITED STATES DISTRICT JUDGE

CONSENT DECREE: 17-627RSL
p. 12



EXHIBIT
A

Figure 1. Alaskan Copper Works facility
stormwater discharge points as of 2/21/18

Attorney Work Product

DRAFT



**EXHIBIT B**

ROSE FOUNDATION
for COMMUNITIES
and the ENVIRONMENT

WWW.ROSEFDN.ORG

1970 BROADWAY, SUITE 600, OAKLAND, CA 94612-2218
ROSE@ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

February 14, 2017

Thomas Swegle
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Puget Soundkeeper Alliance v. Alaskan Copper Companies, Inc. (Case No: 17-627-RSL)

Dear Mr. Swegle,

This letter is intended to provide assurance that I have received the Consent Decree between Puget Soundkeeper Alliance and Alaskan Copper Companies, Inc. ("ACW"), and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from ACW as specified in the Consent Decree. Since the Rose Foundation will be moving in a few weeks, **after April 15, any funds or communication should be directed to the Rose Foundation's new address:**

   **201 4th Street, Ste. 102**
   **Oakland, CA 94607**

2) The Rose Foundation shall only use these ACW funds for environmental projects benefiting water quality in the Puget Sound basin. We shall disperse the funds through the Rose Foundation's Puget Sound Stewardship & Mitigation Fund, a grantmaking fund, which is wholly dedicated to supporting projects that benefit the water quality of Puget Sound.

3) Due to the location of the ACW facilities in the Duwamish watershed, in selecting grantees the Rose Foundation shall target the funds towards projects located in or directly benefitting the Duwamish River. Furthermore, due to the disproportionate impact of pollution from facilities such ACW to low-income neighborhoods and communities of color in the Duwamish watershed area, in selecting grantees the Rose Foundation shall prioritize projects which involve and/or benefit disadvantaged communities in this area.

4) After funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Rose Foundation does not support lobbying activities that are prohibited by Section 501(c)(3) of the IRS Code, and no portion of ACW funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

1

2 CERTIFICATE OF SERVICE

3 I, Katherine Brennan, hereby certify that on March 30, 2018, I electronically filed the

4
foregoing with the Clerk of the Court using the CM/ECF system which will send notification of
5

6 such filing to the following:

7
Jeff B. Kray, WSBA No. 22174
8 Sarah J. Wightman, WSBA No. 51526
1191 Second Avenue, Suite 2200
9 Seattle, WA 98101 Phone: 206-292-2600
Fax: 206-292-2601
10 Email: jkray@martenlaw.com swightman@martenlaw.com

11

12

13

14

15 DATED this 30th day of March, 2018, in Seattle, Washington.

16
/s/ Katherine Brennan
17 KATHERINE BRENNAN, WSBA #51247
2317 E. John St., Seattle, WA 98112
18 Tel: (206) 860-2883 Fax: (206) 860-4187
Email: katherine@smithandlowney.com
19

20

21

22

23

24

25

26

27
CERTIFICATE OF SERVICE
28 _____

1

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

**SMITH & LOWNEY, P.L.L.C.**
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

March 30, 2018

Docket Clerk for the Honorable Robert S. Lasnik

Re:   *Puget Soundkeeper Alliance v. Alaskan Copper Works, Inc.* - No. 17-00627;
      Waiting period before entry of consent decree

Dear Docket Clerk:

        This is submitted with the proposed Consent Decree and Joint Motion for Entry of Consent Decree for the above-captioned case. Please note that, pursuant to the explicit direction of the Clean Water Act, the Consent Decree should not be entered by the Court until a 45-day Department of Justice and EPA review period has expired. Thus, the motion is noted accordingly. Please do not have this Consent Decree entered before that time. Please call if you have any question about this. Thank you.

                                        Sincerely,

                                        SMITH & LOWNEY, P.L.L.C.


                                        By: *s/Katherine E. Brennan*
                                        Katherine E. Brennan, WSBA No. 51247
                                        Attorney for Plaintiff